**Billy Gene HUNTER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–79–336.**

Court of Criminal Appeals of Oklahoma.

Nov. 23, 1981.

Don Ed Payne, Hugo, for appellant.

Jan Eric Cartwright, Atty. Gen., William S. Flanagan, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

On April 23, 1978, Billy Gene Hunter shot and killed a man in a bar in Hugo, Oklahoma. According to the testimony of a witness, Hunter said to the man, "You owe me $1,500," and the man replied, "I don't owe you anything." Hunter stepped back, pulled out a pistol and shot him. He was convicted of Murder in the First Degree and sentenced to life imprisonment.

### I

The appellant, first, objects to the information. Title 22 O.S.1971, § 401, provides that an information must contain a "statement of the acts constituting the offense, . . ." and Title 22 O.S.1971, § 402, requires the information to be "direct and certain" concerning the "particular circumstances of the offense charged, when they are necessary to constitute a complete offense." The appellant argues that malice is an element of the offense of first degree murder, and the information must contain a statement of acts that would show malice. He asserts that a conclusory allegation that the crime was committed with malice aforethought is insufficient.

There is no merit to the appellant's argument. The statement of the offense required by 22 O.S.1971, § 401, must be "in such a manner as to enable a person of common understanding to know what is intended." This Court believes that a person of common understanding would know what was intended by the phrase "with malice aforethought." Malice is defined in 21 O.S.Supp.1980, § 701.7(A), as "that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof." For the purposes of the information, it is sufficient to allege that malice

aforethought existed. The information in the present case charged as follows:

> ... the said defendant ... with malice aforethought, did then and there willfully, unlawfully and feloniously, without authority of law, effect the death of Sammy Grimes, by shooting and discharging a leaden bullet into the body of him the said Sammy Grimes, from a certain loaded .22 caliber pistol which he, the said defendant then and there had and held in his hand, then and there and thereby inflicting certain mortal wounds...

These allegations were sufficient to apprise the appellant of what he was accused of having done.

## II

The appellant argues that the trial court erred in giving Instruction No. 14. The instruction informed the jury that it is unlawful "for any person to carry into or to possess any pistol or revolver in any establishment where beer is being consumed, except as to the owner or proprietor or any peace officer in the line of duty."

This instruction was proper in light of the appellant's defense of excusable homicide. Title 21 O.S.1971, § 731, provides that homicide is excusable:

> 1. When committed by accident and misfortune, in lawfully correcting a child or servant, or in doing any other lawful act, by lawful means, with usual and ordinary caution, and without any unlawful intent.
>
> 2. When committed by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat provided that no undue advantage is taken, nor any dangerous weapon used, and that the killing is not done in a cruel or unusual manner.

To necessitate an instruction on excusable homicide there must be some evidence of an accidental death and the evidence must establish that the defendant was "involved in some lawful act, by lawful means, with usual and ordinary caution, without any unlawful intent." *Johnson v. State*, 506 P.2d 963 (Okl.Cr.1973). In this case, the trial court was correct in instructing the jury of the possible unlawful acts on the part of the appellant. The jury was required to determine whether the appellant was engaged in a lawful act at the time of the homicide, to support a finding of excusable homicide. Therefore, Instruction No. 14 pertaining to the illegality of carrying a pistol where beer is consumed was appropriate. *See Adams v. State*, 93 Okl.Cr. 333, 228 P.2d 195 (1951).

## III

The appellant further contends that the rest of the trial court's instructions failed to sufficiently set forth his theory of defense. He presented four requested instructions on the subject, all of which were refused by the trial court. After carefully reviewing the jury instructions, as a whole, we find that the court's instructions were adequate in regard to the appellant's theory of defense. Correct statements of the law were instructed on concerning self-defense and excusable homicide.

## IV

Next the appellant complains that the prosecutor went outside the record during his closing argument:

> ... I think that under the evidence in this case you will come back in this Court room with a verdict, and by your verdict you will say, 'Guilty of murder in the first degree'. And that from that verdict there will go out from this time and place that justice in Choctaw County is alive, that human life is not cheap.
>
> BY MR. PAYNE: Now, if the Court please, this is improper argument to which we object.
>
> BY THE COURT: The objection will be overruled.
>
> BY MR. SONGER: But human life is sacred. The life's blood of that elderly Indian male, as the doctor testified, is sacred, and by your verdict you will say so.

These comments were improper. However, to constitute reversible error, improp-

er prosecutorial comment must be so grossly improper and unwarranted that it may affect the rights of the defendant. *See Pickens v. State*, 450 P.2d 837 (Okl.Cr.1969). After reviewing the entire record we find that the comments at bar were not so prejudicial as to have influenced the jury's verdict.

## V

 One of the jurors in the appellant's trial had a guardian appointed to act in her behalf in 1975, but the appellant did not discover this fact until after the trial. He now argues that the incompetency of a juror rendered the verdict invalid. *See* 22 O.S.1971, § 658(3). This argument is without merit. The record of the hearing on the motion for a new trial shows that the juror was not adjudged incompetent, but that the guardian was appointed to assist her and her husband with their financial affairs. The guardian was discharged in 1976. The appellant has not made any showing of prejudice, nor does this Court find that any occurred.

## VI

The appellant claims that the trial court should have instructed the jury on second degree manslaughter. In view of the appellant's theory of defense, that the pistol was accidentally discharged, an instruction on second degree manslaughter was inappropriate. The evidence presented at trial did not warrant a second degree manslaughter instruction. Second degree manslaughter requires that a killing be procured by the culpable negligence of another. 21 O.S.1971, § 716. In *Miller v. State*, 523 P.2d 1118 (Okl.Cr.1974), the defendant, while drinking with friends, pointed a pistol at Fink and shot and killed him. In *Miller* this Court held that:

> ... [W]hatever culpable negligence can be attributed to defendant must be attributed to the manner in which he pointed the gun at Fink. This, in turn, means that even if defendant was culpably negligent within the interpretation of that term given by this Court, he was culpably negligent while committing a misdemeanor. The misdemeanor manslaughter doctrine set forth in Subsection 1 of 21 O.S.1971, § 711 then becomes operative, and, under the instant facts, effectively precludes the possibility of a finding of Manslaughter in the Second Degree. In such a case we cannot say that the offense of Manslaughter in the Second Degree was reasonably suggested by the evidence.

We find that *Miller v. State, supra*, is dispositive of the appellant's final proposition. The judgment and sentence is AFFIRMED.

BUSSEY, J., concurs.

BRETT, P. J., concurs in results.